# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 28, 2011

No. 10-30237

Lyle W. Cayce
Clerk

BONITA KING, wife of/and; GARY HARTMAN,

Plaintiffs–Appellees

v.

CASA GRANDE CONDOMINIUM ASSOCIATION, INCORPORATED,

Defendant–Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:07-CV-73

Before KING, STEWART, and OWEN, Circuit Judges.

PER CURIAM:[*]

Condominium owners Bonita King and Gary Hartman sued Casa Grande Condominium Association, Inc. for failing to pursue a claim on their behalf under the association's flood insurance policy for damages resulting from Hurricane Katrina. Following a bench trial, the district court entered judgment against the condominium association for the full amount of damages that King and Hartman sustained in the flood. The association appeals the district court's

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-30237

calculation of damages.  We reverse the judgment of the district court and remand for recalculation of damages.

## I.  FACTS AND PROCEDURAL HISTORY

Bonita King and her husband Gary Hartman, Appellees here, were owners of Unit 0B in Casa Grande Condominiums at 4900 St. Charles Avenue in New Orleans, Louisiana.  The building is managed by Appellant Casa Grande Condominium Association, Inc. ("Casa Grande"), a nonprofit company whose membership consists of Casa Grande Condominiums' individual unit owners.

Casa Grande held a flood insurance policy on the building and its units, issued by Standard Fire Insurance Company ("Standard Fire") and administered by Travelers Insurance Company ("Travelers").  The flood policy was issued under the National Flood Insurance Program ("NFIP"), which Congress established to provide flood insurance with reasonable terms and conditions to those in flood-prone areas.  *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998). Policies issued under the program are subject to terms and conditions promulgated by the Federal Emergency Management Agency ("FEMA") and codified in the Standard Flood Insurance Policy ("SFIP").  *See* 44 C.F.R. § 61.4(b); *id.* at Pt. 61, App. A.

King and Hartman held a separate, secondary flood insurance policy on Unit 0B, which they purchased from State Farm Fire and Casualty Company ("State Farm"). The policy, which was also issued under the NFIP, contained a clause stating that their policy provided building coverage for flood-related damage in excess of the Standard Fire SFIP issued to Casa Grande.  Thus, King and Hartman were entitled to payments under the State Farm SFIP only after the primary coverage—Casa Grande's policy with Standard Fire—was exhausted.

In August 2005, Unit 0B, along with the common areas that were also on the lower level of Casa Grande Condominiums, suffered significant flood-related

2

damage as a result of Hurricane Katrina. An insurance claims adjuster provided by Travelers inspected the building on October 27, 2005, and determined that the Casa Grande property suffered $46,414.37 in covered building damage, including $2,324.04 in damage to Unit 0B. The claims adjuster's estimate expressly limited the allowable damages to the common areas "as per the NFIP guidelines for a basement."

It was discovered that, although Casa Grande Condominiums was valued at $2,471,000, due to an alleged clerical error by Casa Grande's insurance agent, Casa Grande had obtained only $247,100 in building coverage. Because Casa Grande had underinsured the property, Travelers imposed an eighty-six percent co-insurance penalty; Casa Grande was reimbursed only $5,498.01 of its $46,414.37 claim. Casa Grande gave King and Hartman five percent of its recovery, or $275.29, representing their share of damages "based on both the damages to Casa Grande common elements and the damages to . . . Unit #0B." Casa Grande subsequently brought suit against Standard Fire and its insurance agent seeking additional recovery for its flood-related claims, but did not seek additional recovery for damage to Unit 0B. King and Hartman sought recovery under their individual State Farm policy and received payment for certain items under their contents coverage. However, in part because Casa Grande's claim had not exhausted the limits of its Standard Fire policy, King and Hartman could not recover under their secondary State Farm building coverage.

King and Hartman filed a petition for damages on August 29, 2006, against Casa Grande, State Farm, Standard Fire, and Metropolitan Property and Casualty Insurance Company ("Metropolitan")—who issued a dwelling policy to King and Hartman for Unit 0B—in the Civil District Court for the Parish of Orleans, State of Louisiana. After removal to the District Court for the Eastern District of Louisiana, the district court subsequently dismissed King and Hartman's claims against Metropolitan, Standard Fire, and State Farm.

No. 10-30237

The suit proceeded to a bench trial on King and Hartman's remaining claims against Casa Grande. King and Hartman alleged that Casa Grande acted negligently in failing to obtain adequate insurance for the property, thus accruing a co-insurance penalty that reduced the recovery for damage to Unit 0B, and for failing to pursue additional damages from Standard Fire and its insurance agent on King and Hartman's behalf.

On October 5, 2009, following a two-day bench trial, the district court issued its Findings of Facts and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52(a). The district court found that Casa Grande was negligent in its failure to obtain sufficient insurance and to appropriately handle a claim for damage to Unit 0B on King and Hartman's behalf. The district court reasoned that King and Hartman were entitled to damages because Casa Grande pursued only its own claims against its insurance agent and Standard Fire and "took no action on the Plaintiffs' claim as it operated under the mistaken assumption that Plaintiffs' unit was not covered under the Defendant's primary policy." The district court concluded that this error by Casa Grande led it to underreport the damage to the property and "exclude[] Plaintiffs from the claim and settlement" with its insurance agent and Standard Fire.

The district court awarded King and Hartman $47,872.70 in damages, plus costs and interest at a rate of three per cent. This amount reflected their claimed damages of $57,636.54 less their travel expenses, which the district court concluded were not attributable to Casa Grande's negligence, the replacement cost of a refrigerator that was insured under a separate policy, and the $275.29 payment that King and Hartman had received from Casa Grande's settlement with Standard Fire. Casa Grande appeals.

No. 10-30237

## II.  DISCUSSION

**A.      The Damages Award**

On appeal, Casa Grande challenges only the district court's conclusion that it was liable for King and Hartman's full repair costs incurred following Hurricane Katrina.  It argues that the amount awarded by the district court reimbursed costs to which King and Hartman would not have been entitled under the terms of the SFIP even if Casa Grande had not incurred a co-insurance penalty and had diligently pursued King and Hartman's claim. According to Casa Grande, Unit 0B is subject only to the limited coverage that the SFIP affords to basement property, which excludes from coverage many of King and Hartman's claimed damages.  The SFIP limits coverage for property located in a basement to clean-up costs and to certain enumerated items such as drywall and central air conditioners.  *See* 44 C.F.R. Pt. 61, App. A(3) §III(A)(8).

Casa Grande concedes that, if Unit 0B is not found to be in a basement, King and Hartman are entitled to their full damage award.  It argues, however, that ample evidence in the record supports a finding that Unit 0B is in a basement, and therefore the district court erred in holding Casa Grande liable for not obtaining full coverage for Unit 0B and in awarding the full measure of King and Hartman's flood-related repair costs.

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed *de novo*."  *Water Craft Mgmt. LLC v. Mercury Marine*, 457 F.3d 484, 488 (5th Cir. 2006) (citation and internal quotation marks omitted).  A factual finding is "clearly erroneous" when " 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' "  *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

No. 10-30237

1.   *Burden of proof*

King and Hartman assert that Casa Grande put forth insufficient evidence at trial to prove that Unit 0B was in a basement as defined by the SFIP so as to prove the applicability of the SFIP's basement limitation.[1] We recognize that in typical insurance litigation, the insured bears the initial burden of showing that its claimed loss falls within a policy's scope of coverage, at which point the burden shifts to the insurer to prove that an exclusion to coverage applies. *See, e.g.*, 17A COUCH ON INSURANCE § 254:11–12 (3d ed. 2010). Here, however, the defendant is Casa Grande, and not the insurance company, and although the issues at the heart of this appeal turn in part on standard insurance law principles, King and Hartman's claims sound in Louisiana negligence law.

To prevail on a negligence claim under Louisiana law, King and Hartman were required to establish that

> (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element).

*Rando v. Anco Insulations Inc.*, 16 So. 3d 1065, 1086 (La. 2009) (citation omitted). King and Hartman bore the burden of proving every element of their claim by a preponderance of the evidence. *Watters v. Dept. of Soc. Servs.*, 15 So. 3d 1128, 1142 (La. App. 4th Cir. 2009). Accordingly, King and Hartman were required "to prove the damages [they] suffered as a result of defendant's fault, and to support the award, there must be evidence in the record." *Brannan v.*

---

[1] Relatedly, King and Hartman also contend that Casa Grande waived its argument that Unit 0B is in a basement by failing to argue it at trial. To the contrary, we find that the issue was clearly raised in the joint pre-trial order and that Casa Grande raised the issue at trial.

No. 10-30237

*Wyeth Labs., Inc.*, 526 So. 2d 1101, 1106 (La. 1988); *see also Miller v. Mahfouz*, 563 So. 2d 1223, 1226 (La. App. 1st Cir. 1990) ("A plaintiff bears the burden of establishing each and every element of damage claimed.") (citation omitted).

In this case, Casa Grande's negligence was a cause of King and Hartman's losses only to the extent that those losses were covered by the SFIP and would have been reimbursed under the Standard Fire policy. Even if Casa Grande had procured sufficient insurance so as to avoid a penalty and appropriately handled its claim for the flood damage to Unit 0B, it could have obtained payment from Standard Fire only up to the amount of coverage allowed by the SFIP for Unit 0B. If a portion of the flood damages to Unit 0B fell outside the scope of the SFIP's coverage, King and Hartman would have been unable to recover those costs irrespective of Casa Grande's negligence. Therefore, in order for King and Hartman to prove that, but for Casa Grande's negligence, they would have been reimbursed for the full measure of their flood-related damages, they had to establish that they were entitled to full coverage under the SFIP, implicit in which is proof that Unit 0B is not subject to any limitations in coverage when presented with evidence to the contrary.

**2.      *Whether Unit 0B was in a "basement" under the SFIP***

Casa Grande argues that the district court erred in finding Casa Grande liable for the full amount of King and Hartman's repair costs, contending that King and Hartman would have been entitled to clean-up and replacement costs only for certain items under the limited coverage that the SFIP affords to basements. The district court concluded that Casa Grande's negligence caused King and Hartman to receive less than "the appropriate amount for covered damages to" Unit 0B. However, in imposing a damage award for their full repair costs, the district court made no factual finding that all of those costs were covered by the SFIP and would have been reimbursed under the policy but for Casa Grande's negligence. Furthermore, the district court did not make an

explicit finding that Unit 0B was not in a basement within the meaning of the SFIP. However, to the extent that the district court implicitly found that Unit 0B was not in a basement, such that King and Hartman were entitled to their full damages rather than the SFIP's limited basement coverage, that finding is clearly erroneous. The great weight of the evidence suggests otherwise.

Although Louisiana law governs the negligence claim, interpretation of flood policies issued under the NFIP is governed by federal law and resolved "by drawing upon standard insurance law principles." *Hanover Bldg. Materials, Inc. v. Guiffrida*, 748 F.2d 1011, 1013 (5th Cir. 1984) (citation and internal quotation marks omitted). Pursuant to standard insurance law principles, "if the language of a policy is clear and unambiguous, it should be accorded its natural meaning." *Id.* (citation and internal quotation marks omitted). Furthermore, "[w]here a term is defined in the policy, the court is bound by the policy definition." *Nelson v. Becton*, 929 F.2d 1287, 1289–90 (8th Cir. 1991) (citation and quotation marks omitted) (interpreting the definition of "basement" within the SFIP).

The SFIP clearly and unambiguously defines a "basement" as "[a]ny area of the building, including any sunken room or sunken portion of a room, having its floor below ground level (subgrade) on all sides." 44 C.F.R. Pt. 61, App. A(3) § II(B)(5); *see also Linder & Assocs. v. Aetna Cas. & Sur. Co.*, 166 F.3d 547, 550 (3d Cir. 1999) ("Each court considering the SFIP's basement exclusion has found its language to be clear and unambiguous."); *Becton*, 929 F.2d at 1289 ("The definition of 'Basement' in the policy is straightforward and clear . . ."). Courts that have applied the SFIP's basement provision have held that the clear language of the provision establishes that property at *any* depth below ground level on all sides is a basement as defined by the SFIP. *See, e.g., Becton*, 929 F.3d at 1289 ("The extent to which [properties are] subgrade, whether 6, 8, or 40 inches, is immaterial under the policy. The only question is whether they [are] subgrade or at ground level.").

The evidence before the district court regarding Unit 0B's elevation overwhelmingly suggests that it is subgrade, and therefore in a basement for the purposes of the SFIP. An elevation certificate of Unit 0B, introduced as an exhibit at trial, indicates that Unit 0B's elevation is 2.6 feet, while the lowest adjacent grade is 4.4 feet. Thus, the certificate shows that Unit 0B's floor is at least 1.8 feet lower than the lowest elevation adjacent to the building, and therefore, below ground level on all sides. *See Linder & Assocs.*, 166 F.3d at 550 ("[I]t is obvious from *Becton* that the 'ground level' referred to in the policy definition[] is intended to be that area close and adjacent to the lower level door.") (citation and internal quotation marks omitted). That Unit 0B is subgrade is also supported by testimony at trial. For instance, David Klump, a contractor who repaired Unit 0B, testified that the unit is "in a basement below grade." Another contractor, Kevin Hurtt, testified that he had to walk down three or four stairs to enter the unit. *See Becton*, 929 F.2d at 1289 (evidence that is was necessary to walk up at least one step from lower level of building to the yard indicated that lower level was subgrade); *Linder & Assocs.*, 166 F.3d at 550 ("If a person must step up when exiting the lower level to the outside, the lower level is below ground level and, thus, is a basement.") (citation omitted). Furthermore, the Travelers insurance claims adjuster expressly determined that the common areas on the lower level of Casa Grande Condominiums were subject to the SFIP's limited basement coverage provisions, and uncontroverted testimony at trial established that the common areas are contiguous with Unit 0B.

In response, King and Hartman point only to King's trial testimony that she and Hartman obtained and submitted the elevation certificate to State Farm, which subsequently issued what they believed to be full coverage for Unit 0B. King also testified that State Farm had paid a contents claim following Hurricane Katrina, and that no basement issues arose in connection with that

claim. While this testimony constitutes some evidence from which the district court could have concluded that Unit 0B is not in a basement for purposes of the SFIP, upon review of the entire evidence, we are "left with the definite and firm conviction" that such a conclusion is against the preponderance of the evidence. *Anderson*, 470 U.S. at 573. In the face of this evidence, King and Hartman—who bore the burden of proving that they were entitled to full coverage for their flood-related damages—did not provide sufficient evidence to establish that Unit 0B was at ground level or above, and not in a basement as defined by the SFIP.

### 3. *Calculation of damages*

Given the above, we must reverse and remand so that the district court may consider which of King and Hartman's proven damages would have been covered by the SFIP had Casa Grande secured adequate coverage and diligently pursued their claim. It appears that King and Hartman's claimed damages include renovation costs that are either not recoverable under the governing provisions of the SFIP or are not flood-related expenses. To the extent that the district court awarded damages to reimburse King and Hartman for costs not covered by the SFIP, it clearly erred; those costs cannot have been the result of Casa Grande's negligence.

However, we do not agree with Casa Grande that King and Hartman are entitled to only $2,048.75, reflecting the amount of the covered flood-related damage calculated by the insurance claims adjuster, less the $275.29 already paid to them as their pro rata portion of the recovery from Casa Grande's settlement with Standard Fire. The claims adjuster's estimate calculated damages for flood clean-up and unfinished drywall replacement—items falling within the narrow categories of recovery allowable under Section III(A)(8) of the SFIP for basement property. However, King and Hartman presented evidence that they incurred clean-up and repair costs which may also fall within the SFIP's limited basement coverage, and Casa Grande may have been able to

recover those additional costs had it assiduously pursued a claim on behalf of King and Hartman. We leave it to the district court on remand to determine which of King and Hartman's claimed costs, if any, would have been covered by the SFIP but for Casa Grande's negligence.

## B. Appellees' Motion to Strike

On appeal, Casa Grande urges us to consider portions of King and Hartman's insurance file with State Farm that was submitted by State Farm in connection with its motion for summary judgment, and to take judicial notice of portions of certain FEMA publications and regulations. King and Hartman moved to strike Casa Grande's record excerpts containing this evidence and references thereto in Casa Grande's briefs on the basis that none of this evidence was offered or used at the bench trial. We note the general principles that "this court will not enlarge the record on appeal with evidence not before the district court," *McIntosh v. Partridge*, 540 F.3d 315, 327 (5th Cir. 2008) (citation and internal quotation marks omitted) and that "[w]e are limited in our consideration to that information properly before the district court at the time of its decision," *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 489 n.12 (5th Cir. 2007). However, none of this material would have altered the outcome of this case, which we reach solely on the basis of evidence presented at trial. Therefore, because we do not rely upon any of the challenged record excerpts or references thereto, King and Hartman's motion to strike is denied as moot.

## III. CONCLUSION

For the foregoing reasons, we REVERSE the judgment of the district court and REMAND for further proceedings on the issue of damages. Appellees' motion to strike portions of Appellant's brief is DENIED as moot.