STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

23-664


TOYONICKA CORMIER

VERSUS

BOYS TOWN LOUISIANA, INC.



**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 2021-10242
HONORABLE MICHELE BILLEAUD, DISTRICT JUDGE

**********

WILBUR L. STILES
JUDGE

**********

Court composed of D. Kent Savoie, Guy E. Bradberry, and Wilbur L. Stiles, Judges.


AFFIRMED.

**James R. Morris**
**Sudduth & Associates, LLC**
**1109 Pithon Street**
**Lake Charles, LA 70601**
**(337) 480-0101**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Toyonicka Cormier**

**Shelton Dennis Blunt**
**Brittany Alexander**
**Phelps Dunbar LLP**
**400 Convention Street, Suite 1100**
**Baton Rouge, LA 70802**
**(225) 346-0285**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Boys Town Louisiana, Inc.**

**STILES, Judge.**

Plaintiff/Appellant Toyonicka Cormier's minor son was shot to death after he left a residential facility owned by Defendant Boys Town Louisiana, Inc. Plaintiff maintained that Defendant was negligent in failing to restrain her son from leaving the facility and pursued damages associated with his death. Defendant sought summary judgment, alleging that Plaintiff would be unable to establish it owed a duty to physically restrain Plaintiff's son or that the risk he encountered after his departure from the facility was within the scope of the duty owed. The trial court entered summary judgment in favor of Defendant. Plaintiff appeals. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff explained in her Petition for Damages that her minor son Emori[1] was convicted of a criminal offense in February 2020. Although Emori was initially incarcerated in the Lafayette Parish Correctional Center for Youth, he was later transferred to Defendant's facility in Gretna, Louisiana. Plaintiff alleged that although Defendant had a duty to detain Emori at the facility, it "negligently allowed" him "to leave the compound and return to Acadia Parish." Plaintiff asserted that adult gang members thereafter shot Emori to death when he refused to join their gang. In addition to damages for Emori's wrongful death, Plaintiff advanced a survival action.

Defendant explained in its answer that Emori left its facility "on his own volition" but rejected Plaintiff's allegations of negligence. Defendant instead filed a motion for summary judgment, asking the trial court to dismiss Plaintiff's claims, with prejudice, and maintained that she would be unable to prove that Defendant

---

[1] Emori was seventeen years of age at the time of the pertinent events.

breached any duty owed or that Emori's death, which occurred in a different parish at the hands of a third party, was within the scope of any duty owed.

Defendant supported its motion with Plaintiff's petition, Plaintiff's Answers to its First Set of Interrogatories and Responses to Requests for Production of Documents, and affidavits from its Executive Director and its Supervisor of Intervention and Assessment Program. Defendant maintained that its facility is residential in nature and that it did not have a duty to physically restrain Emori from leaving the facility. Moreover, Defendant noted that Emori left its Gretna facility on April 5, 2020, and that he died in Acadia Parish from a gunshot wound more than a month later, on May 15, 2020. Given those circumstances, Defendant asserted, any duty owed to Emori would not include protection from the risk encountered.

In opposition, Plaintiff attempted to introduce an excerpt of a "Request for Proposals for Non-Medical Group Home" issued by the State of Louisiana, Office of Juvenile Justice and an excerpt from OJJ's "Standard Operating Procedures for Contract Providers." Plaintiff maintained that the documents demonstrate that Boys Town personnel were expressly permitted to use appropriate physical force to prevent a youth resident from "absconding from custody."

At the hearing on the April 17, 2023 motion for summary judgment, Defendant objected to the form of Plaintiff's evidentiary submission. The trial court excluded Plaintiff's exhibits, finding that the documents were not in proper form as they were not certified, sworn, or verified. *See* La.Code Civ.P. art. 966(A)(4).

On the merits, the trial court found in favor of Defendant, explaining that:

> I find that there is no genuine issue of material fact that Boys Town had a duty to physically restrain plaintiff or that the risk that Mr. Carter would be murdered 40 days later more than 100 miles from Boys Town, a boy's home, would fall within the scope of that duty. I find that the plaintiff had not proven either a duty or proximate cause of any

2

damages. I find that the plaintiff had not proven either a duty or proximate cause of any damages. In evaluating the duty element, the inquiry is whether the plaintiff had any loss, statutory or jurisprudential, to support her claim that a duty exists. Plaintiff has shown no legal authority to impose a duty on a non-secure, residential facility to physically detain its residents to prevent them from leaving. In support of their motion, Defendant has submitted two sworn affidavits for consideration, as well as the petition and discovery, and according to those affidavits, the boys' home is a community-based program, a non-secure facility, that provides services to youth aimed at promoting social and emotional adjustment, independent living skills, and eliminating negative behavior. Boys Town operates in part through social services contracts with OJJ where they reserve six beds at the boys' home for male youths between the ages of 12 and 18 who are in OJJ custody. It is not the policy of Boys Town to lock doors from the inside. Boys Town is classified as a residential home, Type 4.

. . . .

Further, even if there was a duty, the lack of any evidence showing a bre[a]ch of duty which then shifts the burden to the plaintiff to provide factual support sufficient to establish a genuine issue of material fact, and that the mover is not entitled to judgment as a matter of law, and that plaintiff has not done that in this case. Plaintiff has submitted no evidence to establish that Boys Town, in any way, violated any of their own policies or were in any way negligent. In looking at proximate cause, Plaintiff must show that the risk of harm was within the scope of the protection afforded by the duty bre[a]ched. Plaintiff's son was murdered by a third party 40 days after he voluntarily walked out of the facility, and 100 miles away from the facility. In this case, even if there was a duty, the reason for the duty would not be to protect Carter from a murder 40 days later, 100 miles away. For those reasons, the motion for summary judgment is granted.

The trial court subsequently entered a summary judgment in favor of Defendant and dismissed Plaintiff's claim against it.[2]

Plaintiff appeals, questioning: 1) whether the trial court erred in refusing to accept the Request for Procedure and Standard Operating Procedure excerpts in opposition to the motion for summary judgment; and (2) whether the trial court erred in finding no genuine issues of material fact.

---

[2] The trial court granted Plaintiff leave to file a Supplemental and Amending Petition naming OJJ as a defendant. Those proceedings are not before this court.

## DISCUSSION

*Summary Judgment*

Louisiana Code of Civil Procedure Article 966(A)(2) provides that the summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action other than those specifically disallowed. Accordingly, the court shall grant a motion for summary judgment "if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

"The burden of proof rests with the mover." La.Code Civ.P. art. 966(D)(1). If, however, the mover will not bear the burden of proof at trial on the matter at issue, the mover is not required to "negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id.* The adverse party is thereafter required to "produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.*

On review of Plaintiff's arguments, we consider the trial court's ruling on the motion for summary judgment under the de novo standard, using the same criteria considered by the trial court, i.e., whether there is any genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. *Guidry v. Brookshire Grocery Co.*, 19-1999 (La. 2/26/20), 289 So.3d 1026.

*Motion for Summary Judgment – Documents Filed in Opposition*

Plaintiff first questions the trial court's determination that her two evidentiary offerings in opposition to Defendant's motion were not in proper form as they were

not certified, sworn or verified as required by La.Code Civ.P. art. 966(A)(4).[3]

Plaintiff points out that both the Request for Proposal and the Standard Operating Procedures were produced by Defendant during discovery. She maintains that since Defendant's attorney signed the responses but "conveniently failed to attach a verification[,]" further verification should not be required.

Plaintiff recognizes the appropriate consideration of La.Code Civ.P. art. 966(A)(4) but maintains that La.Code Civ.P. art. 1458(A) and La.Code Civ.P. art. 863 must also bear on the question of whether the documents were in proper form.

Pertaining to the effect of signing pleadings, La.Code Civ.P. art. 863 provides:

> B.    Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading, and that to the best of his knowledge, information, and belief formed after reasonable inquiry, he certifies all of the following:

---

[3] The trial court sustained Defendant's objection to the documents, stating:

> In opposition to the motion, Plaintiff submitted parts of OJJ's request for proposals for non-medical group homes, otherwise known as RFP, and OJJ's standard operating procedures for contract providers, also known as SOP. Neither of these are in proper form and Defense objects to both. Article 966(a)(4) does specify that proper form for supporting or opposing summary judgment evidence, and these documents are not in that form because they are not certified, sworn, or verified. But even if they were, they do not create a genuine issue of material fact. First, there is nothing establishing that this particular RFP was the basis for the contract between Boys Town and OJJ. Even if it was, the RFP simply provides that in part, youth shall have access to treatment interventions which shall address runaway behavior. There is no evidence to suggest that that was not done in this case. In fact, the supervisor at Boys Town states she did attempt to stop Mr. Carter and convince him to stay and encouraged him to make better choices. The second document, the SOP, which, again, is not in proper form and has been identified or that it was a document in effect with the facility at the time of the incident. It provides one, the definition of a runaway; two, statements regarding use of force, the program will use the least amount of force necessary to prevent and/or deter the undesired behavior; three, the definition of physical restraint; and four, the requirement that if physical restraint is to be used, the program will use the least amount of force necessary to prevent and/or deter the undesired behavior; three, the definition of physical restraint; and four, the requirement that if physical restraint is to be used, the program will get prior approval. There is no evidence that the SOP imposed any duty upon the defendant to use force to restrain Carter; in fact, the duty was to use the least amount necessary. And if physical restraint was to be used, the program would need prior approval.

. . . .

      (3)    Each allegation or other actual assertion in the pleading has evidentiary support or, for a specifically identified allegation or factual assertion, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

Plaintiff further notes that La.Code Civ.P. art. 1458(A) requires that "[w]hen interrogatories are served on a specific party, that party shall verify he has read and confirmed the answers and objections."

Plaintiff argues that examining the above-three articles together leads to "logical conclusions" that: "a. If an interrogatory is served on a specific party, he/she must attach a written verification[;] and "b. If an interrogatory is not served on a specific party, but instead is served on a corporation which cannot sign a verification, its attorney's signature, by virtue of Article 863, attests to the accuracy sufficiently, without a verification." Plaintiff thus concludes that since Defendant's discovery responses were not accompanied by a signed verification, Defense counsel's signature attested to the accuracy of the response and was sufficient per La.Code Civ.P. art. 863.

This argument lacks merit. Instead, the trial court correctly identified the clear and specific language of La.Code Civ.P. art. 966(A)(4) as controlling. At the time of the hearing, Article 966(A)(4) provided in pertinent part that "[t]he only documents that may be filed in support of or in opposition to the motion [for summary judgment] are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions."[4]

_____

[4] Following the signing of the May 4, 2023 judgment under review, the legislature amended Article 966(A) to expand the exclusive list of documents that may be filed and offered in support of or in opposition to a motion for summary judgment to include "certified copies of public documents or public records, certified copies of insurance policies, authentic acts, private acts duly

The 2015 Comments to La.Code Civ.P. art. 966 reiterate that Subparagraph(A)(4) "contains the exclusive list of documents that may be filed in support of or in opposition to a motion for summary judgment." La.Code Civ.P. art. 966 cmt. (b). The Comments likewise indicate that the Subparagraph "intentionally does not allow the filing of documents that are not included in the exclusive list, such as . . . contracts, unless they are properly authenticated by an affidavit or deposition to which they are attached." *Id.* (Emphasis added).

Plaintiff's exhibits were not authenticated by any of the designated methods. While Plaintiff attempts to recruit La.Code arts. 863 and 1458 into the pertinent analysis due to the documents having been produced during discovery, we point out that La.Code Civ.P. art. 966(A)(4) allows for various avenues for their submission. Plaintiff did not submit the exhibits within such a context, however, and submitted only bare excerpts from two OJJ documents pertaining to residential facilities. The trial court correctly identified the meager offering as being outside the parameters of La.Code Civ.P. art. 966(A)(4). *See also Nettle v. Nettle*, 15-1875, p. 5 (La.App.1 Cir. 9/16/16), 212 So.3d 1180, 1183 ("Louisiana Code of Civil Procedure articles 966 and 967 do not permit a party to utilize unsworn and unverified documents as summary judgment evidence. Thus, a document that is not an affidavit or sworn to in any way, or is not certified or attached to an affidavit, has no evidentiary value on a motion for summary judgment."), *writ denied sub nom., Nettle v. Succession of Nettle*, 16-1846 (La. 12/16/16), 212 So.3d 1170.

---

acknowledged, promissory notes and assignments thereof." 2023 La. Acts No. 317, § 1. The amendment became effective on August 1, 2023.

*Motion for Summary Judgment - Merits*

As applicable to negligence suits, La.Civ.Code art. 2315 provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." The supreme court has further explained that tort liability requires a plaintiff to establish that 1) the conduct in question was the cause-in-fact of the resulting harm, 2) the defendant owed a duty of care to the plaintiff, 3) the defendant breached the requisite duty, and 4) the risk of harm was within the scope of protection afforded by the duty breached. *Lazard v. Foti*, 02-2888 (La. 10/21/03), 859 So.2d 656.

Plaintiff questions the trial court's determination that she failed to establish genuine issues of material fact as to the elements of either the duty owed or the scope of the duty owed. Plaintiff's failure to oppose the motion with exhibits suitable under La.Code Civ.P. art. 966(A)(4) is fatal to her arguments as to both elements, however.

Namely, Plaintiff submits that had the trial court admitted, reviewed, and properly interpreted the Request for Proposals and Standard Operating Procedures, it would have seen that these documents demonstrate that Defendant had a duty to know where Emori was at all times and had the authority to use appropriate physical force to prevent him from leaving the facility.

Notwithstanding its objection to Plaintiff's exhibits, Defendant maintained that it had no duty to physically restrain Emori in order to prevent him from eloping and attached the affidavit of its Executive Director, Rashain Carriere, who explained that Boys Town's facility is operated in part through a social services contract and that the Gretna facility reserves numerous beds "for male youth between the ages of 12 and 18 who are in OJJ custody." The Louisiana Department of Children and Family Services classifies the Gretna facility as a Residential Home. It is not a

juvenile detention facility but "is a non-secure residential facility that provides services to youth aimed at promoting social and emotional adjustment, independent living skills, and eliminating negative behavioral patterns." Director Carriere explained that it is "not policy" to lock the facility's doors from the inside.

Defendant additionally introduced the affidavit of Kim Richard, its Supervisor of the Intervention and Assessment Program at the Gretna facility. Supervisor Richard stated that, on April 5, 2020, Emori expressed an intent to leave the facility but that she attempted to convince him to stay at the facility "and encouraged him to make better choices." She explained that Emori refused and "ran out the back door" of the facility. She immediately notified other Boys Town personnel, called the Jefferson Parish Sheriff's Office, and notified OJJ that Emori had left the facility.

In opposition, Plaintiff relied only upon the two subsequently excluded exhibits as she does again on appeal. Plaintiff suggests that examination of the documents would have revealed genuine issues of material fact as, she argues, they indicate that the use of physical force may be appropriate in order to prevent a youth from leaving the facility's custody. Those documents, however, are not within the exclusive list designated by La.Code Civ.P. art. 966(A)(4)(a) as correctly identified by the trial court.

Plaintiff was left with no factual support, let alone support indicating that Defendant owed the purported duty to lock its doors from the inside or to physically restrain seventeen-year-old Emori from leaving the facility. As the adverse party, La.Code Civ.P. art. 966(D)(1) required Plaintiff "to produce *factual support* sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." (Emphasis added.)

9

On appeal, Plaintiff again shapes her argument with reference to the excluded exhibits. Nonetheless, La.Code Civ.P. art. 966(D)(2) provides that "[t]he court shall consider only those documents filed or referenced in support of or in opposition to the motion for summary judgment but shall not consider any document that is excluded pursuant to a timely filed objection." Plaintiff simply has presented no permissible documents and must necessarily rely on pleadings.

However, when a moving party has supported its motion for summary judgment by appropriate affidavits, as in this case, "an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided [], must set forth specific facts showing that there is a genuine issue for trial." La.Code Civ.P. art. 967(B). If the adverse party fails to do so, "summary judgment, if appropriate, shall be rendered against him." *Id.*

Given the Plaintiff's failure to present adequate factual support, we find that the trial court correctly identified that Plaintiff did not establish the duty element. For that same reason, the trial court further correctly recognized that, even if Defendant had a duty to act, the Plaintiff has not established that such a duty extended to protect Emori from the harm encountered under the circumstances presented.

The supreme court has explained that the inquiry surrounding the scope of the duty element is "fact sensitive and ultimately turns on a question of policy as to whether the particular risk falls within the scope of the duty." *Malta v. Herbert S. Hiller Corp.*, 21-209, pp. 17-18 (La. 12/10/21), 333 So.3d 384, 399 (citing *Roberts v. Benoit*, 605 So.2d 1032 (La.1991)). In some instances, a risk of harm "may not be found within the scope of a duty where the circumstances of that particular injury to

that plaintiff could not be reasonably foreseen or anticipated because there was no ease of association between that risk and the legal duty." *Id.*

Supervisor Richard's affidavit indicates that she attempted to convince Emori to stay after he expressed an intent to leave the residential facility on April 5, 2020, but that he refused and ran from the premises. She immediately notified Boys Town personnel, the Jefferson Parish Sheriff's Office, and OJJ of Emori's departure. Plaintiff's Answers to Interrogatories, which Defendant also submitted as an exhibit, indicate that Emori died of a gunshot wound more than a month later, on May 15, 2020, in Crowley, Louisiana located in Acadia Parish.

As with the duty element, Plaintiff offered no admissible factual support in opposition that would indicate that the risk encountered by Emori could have been reasonably foreseen by personnel at the Boys Town facility. Rather, Defendant's submission revealing the circumstances of time, physical distance, and third-party criminal intervention undermine Plaintiff's assertion that genuine issues of material fact exist in that regard. *See Lazard*, 859 So.2d 656 (wherein the supreme court determined that the scope of a sheriff's duty to transfer a juvenile detained in an adult facility to an appropriate juvenile detention center did not extend to the risk that the juvenile would be killed almost twelve hours after his release from custody).

For these reasons, we maintain the trial court's ruling.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this proceeding are assessed to Plaintiff/Appellant Toyonicka Cormier.

**AFFIRMED.**

11